W. L. CANTRELL and SAMUEL CASTLEBERRY, Appellants, v. CITY OF CARUTHERSVILLE, a Municipal Corporation, and GORDON WRIGHT, WYMAN DILLMAN, OBYE COKER, JOHN AHERN, L. K. VAN AUSDALL, and OTT MONAN, Members of the Council of said City, Respondents, No. 41116—221 S. W. (2d) 471.

Division One, June 13, 1949.

*Von Mayes* and *Fred L. Henley* for appellants.

*Ward & Reeves* for respondents.

284

 VAN OSDOL, C.—This is an action to try and determine title to a described parcel of land in the City of Caruthersville, and to enjoin defendants from interfering with plaintiffs' use of the land and to enjoin threatened condemnation of the land. On motion of defendants, the trial court dismissed the petition and abated the cause. Plaintiffs have appealed. Interesting questions relating to provisions of the Civil Code of Missouri (Laws of Missouri, 1943, p. 353 et seq., Mo. R. S. A. § 847.1 et seq.) are presented. This court has appellate jurisdiction on the ground the case involves "title to real estate." Section 3, Article V of the Constitution of Missouri, 1945; Nettleton Bank v. McGaughey's Estate, 318 Mo. 948, 2 S. W. 2d 771. The judgment sought, if granted, would directly affect or operate upon title to real estate.

The grounds alleged in the motion to dismiss are that the subject matter of plaintiffs' action to determine title is the same subject matter of a cause between the same parties pending in the Court of Common Pleas of Cape Girardeau County on change of venue from Pemiscot County; that said pending action is in ejectment instituted by the defendants and against the plaintiffs in the instant action to recover possession of the identical parcel of land involved in the instant action; that the action pending in said Court of Common Pleas was filed October 27, 1947, and the instant action was filed May 24, 1948; that in the prior action the plaintiffs herein, as defendants in that action, were required "under the new civil code of procedure, to plead as a defense, counterclaim or cause of action in their answer in said prior suit the same matters pleaded in this action, and that the issues in the present suit are germane to and should be disposed of in said prior suit."

On the hearing of the motion to dismiss it was admitted that the prior action then pending in said Court of Common Pleas was an ordinary action in ejectment. Section 1534 R. S. 1939, Mo. R. S. A. § 1534. The petition states the described parcel of land is part of a public alley. The petition and answer in that case were offered in support of the motion. The land described in the petition *includes* the land involved in the present action. The answer to the petition in the ejectment action stated *title* by adverse possession for more than ten years, payment of taxes, permit from the city to make improvements on the land; and the answer further stated the land "is

no part of a public alley and has never been dedicated by anyone for public purposes." But no affirmative relief was asked.

In their brief defendants-respondents say, "Appellants affirmatively pleaded estoppel and statute of limitations in their answer in the ejectment suit, but they now plead these same matters and other additional matters in an independent suit (instant action to try and determine title), filed seven months after the ejectment suit was filed." Plaintiffs-appellants in their petition in the instant action have also negatived that respondent City is "vested with the fee . . . or an easement." Defendants-respondents further say, "all of which said matters (pleaded in the petition filed in the instant action), insofar as they state any cause of action or ground for relief, must be pleaded in the ejectment suit, because they would constitute 'an avoidance or affirmative defense' to that suit." For such contention respondents rely on Section 40 of the Civil Code of Missouri, Laws of Missouri, 1943, p. 370, Mo. R. S. A. § 847.40. Respondents also say, "If such matters so pleaded (in the instant action to determine title) respecting this same property also state a cause of action or grounds for equitable relief against respondent city, then such matters are required by section 73 of the new code (Mo. R. S. A. § 847.73) to be pleaded as a counterclaim in the ejectment suit."

Respondents contend that the *subject matter of the action* in ejectment and the instant action to try and determine title is the *land*. On the other hand plaintiffs-appellants say that the subject matter of the ejectment action is not the land, but the *possession* of the land, and that the subject matter of the instant action to try and determine title is not the land, but *title* to the land.

▌Were appellants required, as respondents contend, by Section 40 of the Civil Code of Missouri to plead, as a counterclaim for affirmative relief, in the ejectment suit, their claim to determine title?

("Sections" hereinafter refer, except as otherwise indicated, to sections of Civil Code of Missouri, supra.)

Section 40 provides,

"In pleading to a preceding pleading, a party *shall* set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, truth in defamation, waiver, and *any other matter constituting an avoidance or affirmative defense.* . . . " (Our italics.)

Section 40 is almost a literal copy of Section 8(c) of the Federal Rules of Civil Procedure. See Vol. 1, Edmunds, Federal Rules of Civil Procedure, p. 243; Vol. 1, Carr, Missouri Civil Procedure, pp. 371-2. Respondents, in effect, concede that there is nothing in Section 40, except the language we have italicized, that tends to support their

contention. We find nothing in the Federal decisions dealing with Rule 8(c) in point here. Appellants, in their answer in the ejectment action, pleaded their defense of limitations and estoppel; this was in compliance with Section 40. Does the provision, "any other matter constituting an avoidance or affirmative defense," require a defendant in simple ejectment to plead his title and affirmatively ask that title be determined?

■ The matters specifically named in Section 40 are those generally recognized as pleas of confession and avoidance in common-law pleading, or as new matter constituting a defense under the now repealed Section 928, R. S. 1939, Mo. R. S. A. § 928. The Section 40 makes a more detailed specification of matters in avoidance or affirmative defense than did the Section 928, supra. Vol. 1, Carr, Missouri Civil Procedure, § 169, p. 371. But it is plain it is contemplated the more detailed specification of matters required to be affirmatively pleaded may not include all matters which might constitute an avoidance or affirmative defense to a claim, and the Section makes it clear that "any other" avoidance or affirmative defense, whether or not specified in the Section, shall be "set forth affirmatively." The Section 40 does not treat with counterclaims. A party may state as many separate defenses as he has. Section 42. If a party wishes to surely avail himself of avoidances or affirmative defenses he should affirmatively state them. Section 40; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S. W. 2d 25. Section 73 does treat with counterclaims, however.

█ Section 73 provides,
"A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrences that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Laws of Missouri, 1943, p. 377.

The Section requires a claim (if it is within the other provisions of the Section) to be stated as a counterclaim "if it arises out of the *transaction or occurrences* that is the subject matter of the opposing party's claim."

The Section 73 is almost identical with Federal Rule 13(a). The objective of Section 73 "is to discourage separate litigations covering the same subject matter, and to require their adjudication in the same action." State ex rel. Fawkes v. Bland, 357 Mo. 634, 210 S. W. 2d 31; Vol. 1, Carr, Missouri Civil Procedure, pp. 525-534. The compulsory counterclaim provision [Federal Rule 13(a)] is said to be a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims. Lesnik v. Public Industrial Corporation, 144 F. 2d

968; American Mills Co. v. American Surety Co. of New York, 260 U. S. 360, 43 S. Ct. 149 (counterclaim under former Federal Equity Rule 30). The word "transaction" as used in the Federal Rule 13(a) is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship. This liberal view is now well established. Lesnik v. Public Industrial Corporation, supra; Moore v. New York Cotton Exchange, 270 U. S. 593, 46 S. Ct. 367. The word "claim" and the word "transaction" are both of broad meaning. The word "claim" does not refer to the form of the action but to the underlying facts combined with the law giving a party a right to a remedy of one form or another based on the claim. "Transaction" is a word of still broader meaning. "Transaction" should be broadly construed to include all of the facts and circumstances which constitute the foundation of a claim (Grue v. Hensley, 357 Mo. 592, 210 S .W. 2d 7, at page 10), "all the facts and circumstances out of which the injury complained of . . . arose." Ritchie v. Hayward, 71 Mo. 560 at page 562.

Before giving further attention to the purpose and meaning of the language of Section 73, we will examine the contentions of the parties relating to the term "subject matter" of an action. As stated, it is urged by respondents the subject matter of the priorly pending action in ejectment is the same as that of the instant action to try and determine title. They say the subject matter of both actions is the *land*.

"Subject" of action (or subject matter of an action) "is not a word like 'horse' or 'cow,' which can mean but one thing in whatever position it be placed, but it may be applied, and probably rightly applied, by different minds to different things, tangible or intangible, under the same circumstances. For example, in an action of ejectment one mind might arrive at the conclusion that the land alone was the subject of the action, another that its title was the subject, another that the defendant's wrongful possession was the subject, and still another that all these things together constitute the subject. All of them are treated of in the action." McArthur v. Moffet, 143 Wis. 564, 128 N. W. 445. The language of the Supreme Court of Wisconsin is quoted not only as a nice expression of the variance of meaning which may be intended by different minds by the use of the term "subject of the action" (or "subject matter of the action"), but as a clear implication of the intimate and logical involvement of the issues of *title* to and *possession* of land in an action of ejectment.

"Subject matter" is considered of different meanings as the term is used by the courts in treating with different problems. See the cases noted under terms "Subject-Matter," "Subject Matter of Action," "Subject-Matter of Suit," "Subject of Action." Vol. 40, Words and Phrases, pp. 361-372.

Even prior to the effective date of the Civil Code of Missouri, a plaintiff could join or unite a stated claim for possession of land (in ejectment) with a stated claim to establish title to the same land (to try and determine or quiet title) in one action. See Lane v. Dowd, 172 Mo. 167, 72 S. W. 632, cited by respondents; "the subject-matter of the action is *the land*." And, although a plaintiff only stated a claim for possession, defendant could defend by demonstrating his title, evidence of the extent of his interest or estate, and thus endeavor to defeat plaintiff's claim for possession; and, if he wished, defendant could state his title and ask the affirmative relief of a judgment or decree determining or quieting title. Auldridge v. Spraggin, 349 Mo. 858, 163 S. W. 2d 1042; Titus v. North Kansas City Development Co., 264 Mo. 229, 174 S. W. 432; Hynds v. Hynds, 253 Mo. 20, 161 S. W. 812; and observe the phase "transactions connected with the same *subject of action*" in the now repealed (permissive) joinder of claims statute, Section 917 R. S. 1939, Mo. R. S. A. § 917. "The term 'subject of action,' found in the (New York, 1848) code in this and one or two other sections, was doubtless employed by its authors and the legislature as synonymous with, or rather in the place of, 'subject-matter of the action.' I can conceive of no other interpretation which will apply to the phrase and meet all the requirements of the context. 'Subject-matter of the action' is not the 'cause of action,' nor the 'object of the action.' It rather describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted. It is possible, therefore, that several different 'transactions' should have a connection with this 'subject-matter,' or, what seems to me to be the same thing, with this 'subject of action.' " Pomeroy's Code Remedies, 5th Ed., § 369, p. 562, at page 564. And see "transaction . . . connected with the *subject of the action*" in the now repealed (permissive) counterclaim statute, Section 929 R. S. 1939, Mo. R. S. A. § 929. There is an evident connection between the uniting of claims in one pleading, and the uniting them in one litigation although they are set forth in adverse pleadings. Pomeroy's Code Remedies, 5th Ed., § 651, p. 1057.

The term "subject matter of the action" or "subject of the action," as respondents use the term, is of interest because it reminds us that the same specific tangible "thing," land (which may be viewed abstractly and in a legal sense, that is, as *real property* with rights incident to the ownership thereof), is common to and involved in both the claim for possession stated in respondents' action in ejectment and the claim of title stated in appellants' action to try and determine or to quiet title. "While it is usual to speak of the 'ownership of land,' what one owns is properly not the land, but rather the rights of possession and approximately unlimited user, present or future. In other words, one owns not the land, but rather an estate in land.

This is, in some degree, true of any material thing. One owns not the thing, but the right of possession and enjoyment of the thing." Vol. 1, Tiffany, The Law of Real Property, 3d Ed., § 2, p. 4. Now when a question of ownership or possession is presented, ▮▮▮ attention is immediately focused on title. So we have the rhythmic logical sequence—title—ownership—possession.

The cases, supra in the second preceding paragraph, are of further interest to us here. They signify there is no insurmountable procedural obstacle to a mandatory requirement that a statutory claim to establish title (Article 8, Chapter 8, R. S. 1939, Mo. R. S. A. § 1684 et seq.) be stated as a counterclaim to a stated claim for possession .in the statutory action in ejectment (Article 4, Chapter 8, R. S. 1939, Mo. R. S. A. § 1529 et seq.). Examine Section 2 (Civil Code of Missouri); Sections 1535 and 1685 R. S. 1939, Mo. R. S. A. §§ 1535, 1685; State ex rel. Fawkes v. Bland, supra; Clark Real Estate Co. v. Old Trails Inv. Co., 335 Mo. 1237, 76 S. W. 2d 388; Autenrieth v. Bartley, 238 Mo. App. 55, 176 S. W. 2d 546.

As we have said, appellants contend *title* is the subject matter of the action to try and determine title, and *possession* is the subject matter of the action in ejectment.

It is true the *right* (and the infringement thereof) declared on in a simple action in ejectment is the right to possession, and in more remote times the courts of England in treating with the common-law action restricted the (inconclusive) judgment rendered to the action's possessory *nature*. Taylor v. Horde, 97 Eng. Rep. R. 190 at page 220, 1 Burr. 60 at page 114; Outram v. Morewood, 102 Eng. Rep. R. 630 at page 634, 3 East 346 at page 356. "The judgment, which is the fruit of the action, can only follow the nature of the particular right claimed, and the injury complained of." Outram v. Morewood, supra.

In connection with a question of a court's jurisdiction or power, "subject matter of an action" has been said to mean the nature of the cause of action or the relief sought. See State ex rel. Utilities Power & Light Corporation v. Ryan, 337 Mo. 1180, 88 S. W. 2d 157; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S. W. 25; Hope v. Blair, 105 Mo. 85, 16 S. W. 595. "A court may be said to have jurisdiction of the subject-matter of a suit when it has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed." Hope v. Blair, supra. When the problem is this court's appellate jurisdiction on the ground an appealed case involves "title to real estate" (Section 3, Article V, Constitution of Missouri, 1945), the record of the particular case is examined to ascertain if the controversy is of a class involving "title to real estate." The question is—did the relief sought and granted directly affect or operate on title to real estate? While in an ordinary, simple, straight action in ejectment in which no title relief is sought or granted, the relief sought and granted is the recovery of possession, not

a judgment or decree directly determining title, so, although title to real estate is involved, title is but incidentally or collaterally involved and this court has no appellate jurisdiction of such a case on the ground the case involves title in a constitutional sense. Ballenger v. Windes, 338 Mo. 1039, 93 S. W. 2d 882, and the many cases therein cited; Gibbany v. Walker, 342 Mo. 156, 113 S. W. 2d 792. Nevertheless, *title* (evidence of some interest or estate in the land), evidence of the ownership of part or all of the bundle of rights making up absolute "ownership," *is* the underlying issue essential in *supporting* the right to possession. Ballenger v. Windes, supra; Gibbany v. Walker, supra; and Gibbany v. Walker, 233 Mo. App. 489, 121 S. W. 2d 317. Now it has not been heretofore considered that a claim and counterclaim must be such as presents the same "nature," "kind" or "class" of controversy, that is, either a "title" controversy or a "possessory" controversy, in order that opposing claims for possession and to establish title might be stated in and disposed of in one litigation. Titus v. North Kansas City Development Co., supra; Hynds v. Hynds, supra; Section 929, supra; and now see Section 74 (Civil Code of Missouri, supra). And it is not essential that the claim which Section 73 requires to be stated as a counterclaim should seek the same relief as the opposing party's claim. See State ex rel. Fawkes v. Bland, supra, wherein a defendant wife's claim for separate maintenance was said by Court en Banc to be mandatorily required by Section 73 to be stated as a counterclaim to plaintiff husband's claim for a divorce. The relief sought by the plaintiff husband was the severance of the marital relation; the relief sought by defendant wife was a money judgment.

Again attending the language of Section 73—"*Subject matter*" as used in the Section *is that of the* opposing party's *claim.* But it is the *"transaction or occurrences"* out of which the opposing parties' claims may arise.

Having examined respondents' petition in their action in ejectment, we have observed they have conventionally stated respondent City on a given date was "entitled to the possession of the . . . described" premises and that appellants on a given date "entered into such premises and unlawfully withhold" the possession thereof from respondent City. It is plain the word "transaction" as employed by Section 73 cannot be restricted to the simple statement of the wrong complained of by respondents, "for it would seem to be impossible" that a claim could accrue to appellants out of wrong complained of by respondents. Ritchie v. Hayward, supra, 71 Mo. at page 562. We resort to the facts and circumstances out of which respondents' claim of wrongful entry and withholding of possession arose. We have examined the answer filed by appellants in respondents' ejectment action, and, as noted supra, appellants pleaded their title; and we have examined the parties' briefs, and letters supple-

mentary thereto. We must infer respondent City's alleged right to possession, upon trial (a letter in the file informs us the ejectment case has been tried), is to be supported by proof of City's title, either to the fee or to an easement. See and compare City of Caruthersville v. Huffman, 262 Mo. 367, 171 S. W. 323. It may be respondents will rely (or have relied) upon a dedication of the land to public use as an alley—either a statutory dedication, or common-law dedication by user. Nevertheless, the evidence, title to the fee, or to an easement, by which respondents may endeavor to support and demonstrate City's right to possession would tend to refute appellants' alleged ownership of the land including the incidental right of an owner to the possession of the land, and impeach or challenge the verity or cloud the clarity of appellants' title. The facts and circumstances to be necessarily shown in evidence in support of a claimant's claim of title to the fee simple estate (whether the asserted title be by grant or devise, or by adverse possession) free and clear of any right or interest of another would tend to refute another's claim of title to the fee or to an easement as the supporting evidence of his right to possession.

Now, although appellants stated matters in their answer to respondents' petition in the ejectment action which, if convincingly shown, would establish title by adverse possession supporting absolute ownership, free and clear of any right or interest or estate of respondent City entitling City to possession of the land, appellants stated such matters defensively. Appellants did not then ask the court to try and ascertain title and by its judgment or decree make a conclusive monument of the evidences of the rights, interests and estates of the parties. Thereafter, in their (instant) action to try and determine title, appellants have stated, in effect, the same matters, existent "at the time" they filed their answer in the ejectment case, and seek to make their evidence of their absolute unrestricted ownership conclusive by praying for the affirmative relief of a judgment or decree establishing title upon the trial of which action they expect to re-litigate the same issues [supported by evidence of the same (title) character] as are or were triable in the trial of the case in ejectment. It does seem to us that out of the "transaction," subject matter of respondents' claim, a claim arose upon which appellants may invoke the powers of a court in granting affirmative relief of a judgment and decree determining "any and all rights, claims, interest, liens and demands, whatsoever of the parties, or of any of them, concerning or affecting said real property." Section 1684 R. S. 1939, Mo. R. S. A. § 1684. Such a situation must have been among ▊▊▊ those the legislature had in mind when enacting Section 73 purposing the adjudication in one litigation of opposing parties' claims arising out of the same transaction.

We now give our attention to the effect of the judgment in the action of ejectment as to the issues tried and decided or to be tried and decided, which judgment may even now be of record in the Court of Common Pleas of Cape Girardeau County.. We think it must be seen the Civil Code of Missouri has erased the word "inconclusive" in its application to a judgment of ejectment. Certainly an inconclusive judgment when considered in a relation to the purposes of the modernized Civil Code of Missouri is a strange and incongruous anomaly. Assuredly, we are not now confronted with the duty of gauging the scope and effect of a judgment we have not seen, but the Section 73 shows us the Civil Code of Missouri has made a change in the technically restrictive nature of the action and the inconclusive effect of a judgment as rendered in the old common-law action of ejectment which this court seven decades ago fastened on to the judgments rendered in our *statutory* action in ejectment. See Kimmel v. Benna, 70 Mo. 52. That which was said by this court in that case concerning whether one judgment in ejectment is a bar to another action for the same property (70 Mo., pp. 61-68) was concededly unnecessary to the decision of the case. Yet this gratuitous discussion is the principal basis for the statement, also unnecessary to the decision it seems, in Sutton v. Dameron, 100 Mo. 141 at page 149, 13 S. W. 497 at page 499, "The well-settled rule of law in this state, notwithstanding an improvident *dictum* in *Foster* v. *Evans,* 51 Mo. 39, to the contrary, is, actions of ejectment though between the same parties having the same defenses concerning the same title and possession, and in all respects similar in their facts, may be maintained *ad infinitum* . . ."

Attending the opinion in the Kimmel-Benna case—this court stated what Lord Ellenborough said when reviewing the case, action of trespass, of Outram v. Morewood, supra, in 1803, concerning the effect of judgments in possessory actions. That which Lord Ellenborough said in 1803 was given considerable weight, especially since what Lord Ellenborough said was not inconsistent with that which Lord Mansfield had said when reviewing the case, action in ejectment, of Taylor v. Horde, supra, in 1757. This court said that which Lord Ellenborough had said is confessedly the law "but only shows that to make a judgment in ejectment conclusive of a title which has been investigated and decided, the nature of the action must be essentially changed." 70 Mo. at page 66. The further fact that our legislature in 1857 repealed Section 33 of the "Act for the Recovery of the Possession of Lands," Chapter 58, R. S. 1855, p. 695, was also considered. Section 33, new in 1855, provided that a "judgment, except of nonsuit, in an action authorized by this act, shall be a bar to any other action between the same parties, or those claiming by or under them, as to the same subject matter." The circumstance of the repeal (Laws of Missouri, 1857, p. 34) of the Section 33 so recently enacted, as

stated, in 1855, was said to clearly show "that after an experience of *two* years the common law rule was preferred." (Our italics.) Three Missouri cases decided after the repeal of the Section 33 were cited —Slevin v. Brown, 32 Mo. 176, decided in 1862; and Carter v. Scaggs, 38 Mo. 302, and Holmes v. City of Carondelet, 38 Mo. 552, both decided in 1866, in which cases this court went back to the common-law rule. And this court in the Kimmel-Benna case further said the action of the legislature of 1857 "leads us to doubt whether this State is willing to abandon the safe-guards of the common law, and place traffic in land on the same footing with that in horses." Albeit all, the court announced it did not undertake to say (even in 1879) that a change in the common-law rule might not be wise and beneficial, although the experiment in 1855 did not prove an acceptable one.

We must defer to the views of Lords Mansfield and Ellenborough concerning the common-law possessory action as it was in 1757 and 1803. They surely knew what they were talking about when they spoke of the legal problems of their times. Yet we think we can safely venture the opinion that times have changed since 1757 or 1803, ▮ even since 1879. But, lest some may think time gives increasing weight to the utterances of great judges, we here note Lord Coke's lament in 1612 of the multiplicity "of suits in one and the same case; wherein oftentimes there are divers verdicts on the one side, and divers on the other, and yet the plaintiff or defendant can come to no finite end, nor can hold the possession in quiet, though it be often tried and adjudged for either party." Preface to Volume 8 of Coke's Reports.

Thirty years before the Kimmel-Benna decision, this state had adopted the New York Code of Civil Procedure. Various modern practice procedure adopted in many states has stricken off the common-law restrictions on the action, and changed the "inconclusiveness" of the judgment of ejectment. 18 Am. Jur., Ejectment, § 125, pp. 100-102. And now, by the enactment of the Civil Code of Missouri, our legislature has given litigants, the profession and the courts ready tools which if freely used will effectuate the purposes of all liberal procedural legislation. The possible benefits of this State's adoption in 1849 of the New York procedural Code of 1848 were unduly limited by a "too strict construction and by the adverse influence of technical common law methods in which both lawyers and judges had been schooled." In such situation, and more recently, there was a persistent demand, coming from lawyers and judges, that a new code be adopted modernizing and broadening civil procedural statutes and eliminating technicalities. Vol. 1, Carr, Missouri Civil Procedure, § 1, at page 2, and references cited in note 3. Now we do not see why the *statutory* action of ejectment as a *possessory action* would not perform even more useful and efficient service if freely integrated into and used in connection with the modernized

Civil Code of Missouri, if the judgment in ejectment were considered *conclusive.* It seems that the legislature intended the Civil Code of Missouri should apply to ejectment actions except in any respect which, in the ejectment statutes, is otherwise prescribed. Section 2 (Civil Code of Missouri); Section 1535 R. S. 1939, Mo. R. S. A. § 1535. Now there is nothing said in Article 4, Chapter 8, supra, which makes a judgment rendered in an action in ejectment less conclusive than judgments rendered in other litigation.

Although a claimant may but conventionally declare he is entitled to the possession of described premises, the Civil Code of Missouri affords the opposing party easy means of ascertaining the interest or estate upon which a claimant relies as entitling him to the right of possession. See, passim, Civil Code of Missouri, supra; Vol. 1, Carr, Missouri Civil Procedure; Gerber v. Schutte Inv. Co., supra. Whatever disputes as to interests or estates supporting claimants' rights of possession (interest to the public use, a leasehold, or some freehold estate), it would seem, can be *isolated* and tried and a final judgment rendered as in actions involving rights of a personal nature. The judgment rendered should, we think, be binding upon the parties and their privies. The verity of the evidence of the interest or estate supporting the alleged right of possession having been decided, the right (and its duration) to possession will be supported and finally determined by the judgment. Certainly in some cases title, in the sense of title demonstrating ownership of the freehold, may not be in dispute, but title to some interest such as an easement in the public use or a leasehold estate may be the sole disputed supporting issue, and in any case the isolated sole disputed supporting issue or issues can be tried and the title to the other and conceded interests or estates otherwise left undisturbed. If the judgment in such an action were considered conclusive, the parties in most cases will, we think, deem it unnecessary to counterclaim their title. But if it is true, as some seem to think, land is for some reason more precious than other things (tangible or intangible, of equal money value) it would seem to be all the more desirable that all really disputed claims of title and possession thereof between parties to a pending action involving claims of title or possession of (the same) land should be fixed and finally determined and settled and put in repose in the one litigation, than to let the issues remain alive and unsettled to be determined in some future litigation or series of litigations.

It may be the views herein expressed are not those heretofore entertained by our fellow members of the Missouri Bar, including the judges of courts, and consequently titles to or possession of lands may yet be considered as depending (although actions in ejectment for possession of such lands have been tried) upon a future but conclusive judgment in ejectment or in an action to try and deter-

mine or quiet title, as seems to be the opinion of appellants' counsel of the title to the land involved in the instant action. Consequently, the effect of this decision is prospective. Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825.

Although we believe the action of the trial court in ordering the dismissal of appellants' petition and abating the instant action was right, yet, in justice to appellants, the cause should be reversed and remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.