**JEWISH HOSPITAL OF ST. LOUIS, Relator,**

v.

**The Hon. Gary M. GAERTNER, Judge, Division One, Circuit Court of the City of St. Louis, Missouri, Respondent.**

**No. 46931.**

Missouri Court of Appeals, Eastern District, Division Six.

June 9, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 15, 1983.

Application to Transfer Denied Sept. 20, 1983.

**639**

Parks G. Carpenter, St. Louis, for relator.

L. Steven Goldblatt, St. Louis, for respondent.

GAERTNER, Judge.

During the summer of 1981, Tracy Terry was a patient of Jewish Hospital in St. Louis. It was alleged that on June 19, 1981 agents and employees of the hospital informed her that laboratory tests disclosed she was suffering from a fatal cancer; that this was an erroneous diagnosis and on July 7, 1981, a new report indicated her condition was non-fatal; that by reason of this misdiagnosis she suffered emotional distress and other damage.

On August 4, 1982, Jewish Hospital filed suit in the Circuit Court of St. Louis County against Terry alleging non-payment of its bill for medical services furnished to her during the summer of 1981. Service of summons was obtained upon Terry, a resident of St. Louis County. On October 18, 1982, Terry filed suit for medical malpractice against Jewish Hospital in the Circuit Court of the City of St. Louis. Jewish Hospital is a corporation which maintains offices and conducts its business in the City

of St. Louis. The hospital moved to dismiss Terry's malpractice suit contending, inter alia, that the tort claim asserted therein arose from the same transaction or occurrence which was the subject matter of its suit in St. Louis County, and, therefore, was a compulsory counterclaim. This motion was overruled by respondent and Jewish Hospital filed its application for a Writ of Prohibition. We issued a preliminary order which we now make absolute.

█ If Terry's claim for damages is a compulsory counterclaim to the hospital's suit, then respondent has no power or authority to proceed further and prohibition is the appropriate remedy. *State ex rel. Davis v. Moss,* 392 S.W.2d 260, 261 (Mo. banc 1965).

█ Supreme Court Rule 55.32(a) provides in pertinent part as follows:

"(a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."

Does a patient's claim for damages caused by negligent medical treatment on the part of agents and employees of a hospital arise out of the same transaction or occurrence which gives rise to the hospital's claim for payment for the medical services rendered to the patient? The very statement of the issue answers the question. Indeed, negligent performance of services rendered constitutes a defense to or at least a mitigation of damages in a suit for non-payment of reasonable charges for such services. *Edmonds v. Stratton,* 457 S.W.2d 228, 232 (Mo.App.1970).

█ Respondent here seeks to avoid the nexus between the charges for services rendered and the quality of those services by contending that only the Circuit Court of the City of St. Louis has "jurisdiction and venue" over the claim for medical malpractice. The Circuit Court of St. Louis County has original subject matter jurisdiction over all cases and matters, civil and criminal. Mo. Const. Art. V, § 14(a). While it is frequently said that jurisdiction over the person of the defendant necessitates proper venue, "[t]he fixing of venue in the county of a defendant's domicile confers a mere personal privilege which may be waived by the party entitled to assert it." *State ex rel. Union Electric Company v. Scott,* 470 S.W.2d 1, 3 (Mo.App.1971); *see Sullenger v. Cooke Sales & Service Co.,* 646 S.W.2d 85 (Mo. banc 1983). The party entitled to assert this personal privilege is the party against whom the claim is asserted—in this case, Jewish Hospital. It has consented to personal jurisdiction over it by the Circuit Court of St. Louis County with regard to any subject arising out of the occurrence or transaction which gives rise to its claim against Terry. Terry has no standing to challenge the in personam jurisdiction of the County Circuit Court for the two-fold reasons that she is a resident of St. Louis County and that she is asserting, rather than defending against, the claim for damages resulting from alleged negligence. Moreover, even the stringent requirements of § 508.030, RSMo 1978, placing venue of cases involving the title of real estate in the County where such real estate is located, fall before the policy reasons underlying the compulsory counterclaim rule. *Hughes v. Spence,* 409 S.W.2d 701, 706 (Mo.1966). This argument made on behalf of respondent is spurious.

The term "transaction" as used in Rule 55.32 has been interpreted in a very broad sense. The case of *Harris v. Nola,* 537 S.W.2d 636 (Mo.App.1976), is somewhat analogous to the instant case. In *Nola v. Merollis Chevrolet Kansas City, Inc.,* 537 S.W.2d 627 (Mo.App.1976), an earlier companion case to *Harris v. Nola,* Nola instituted an action against his former corporate employer and others, including Harris, who controlled the corporation. Nola charged these defendants with breach of two contracts and with fraud in connection with an employment contract and an agreement for Nola to purchase the stock in the corporation from the individual defendants. The

corporate defendant counterclaimed for payment of a note signed by Nola and his wife. Nola promptly filed a third-party petition against Harris. This litigation progressed to final judgment. Thereafter, Harris sued the Nola's for non-payment of a separate note which had been executed as security for a loan whereby Harris had furnished to Nola funds with which to meet some of the financial obligations assumed by Nola in the stock purchase agreement. In *Harris v. Nola,* the court affirmed the dismissal of this action, holding Harris' claim on the note should have been asserted as a compulsory counterclaim in the first and companion action. The court stated "[t]he term 'transaction' is one of broad and flexible meaning and is intended to include all the facts and circumstances constituting the foundation of a claim and shall be applied so as to bring all logically related claims into a single litigation." *Harris v. Nola,* 537 S.W.2d at 639. Quoting with approval from *Cantrell v. City of Caruthersville,* 359 Mo. 282, 221 S.W.2d 471, 474 (1949), the court further defined "transaction" as "[i]t may comprehend a series of many occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship" and as including "all the facts and circumstances out of which the injury complained of . . . arose." *Harris v. Nola,* 537 S.W.2d at 639–40.

Perhaps even more analogous to the instant case is *Laclede Gas Company v. Solon Gershman, Inc.,* 539 S.W.2d 574 (Mo.App. 1976). There the Gas Company sued the defendant, a real estate management company, on the account for non-payment of the charges for natural gas. Defendant filed a counterclaim alleging that negligent installation of the gas meter caused defendant to under-charge its tenants. This court held this to be a compulsory counterclaim under the predecessor rule to present Rule 55.32(a).

Thus, both under the plain meaning of the language of Rule 55.32(a) and the interpretation given to that language by the courts, a claim for damages based upon negligent performance of services arises from the same transaction as does a claim for non-payment for those same services.

In the brief filed herein on behalf of respondent, we are urged to adopt what is there referred to as a "four-part test . . . applied" by the United States Court of Appeals for the Eighth Circuit in *Cochrane v. Iowa Beef Processors,* 596 F.2d 254 (8th Cir.1979), *cert. denied* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). Rather than "applying" such a test the mention of the four tests in *Cochrane* is pure dicta, the decisive issue therein being the fact the claim alleged to be a compulsory counterclaim had not matured until after the disposition of other litigation between the parties. What respondent's brief herein describes as a "four-part test" is described by the *Cochrane* court as the "varying" tests discussed in 6 Wright & Miller, Federal Practice and Procedure § 1410 (1971), pages 40–54. There, four distinct tests applied by different courts are discussed. The first three are criticized by the authors as inadequate and of doubtful utility. The fourth test, "is there a logical relationship between the claim and the counterclaim," is said by the authors to have received "by far the widest acceptance among the courts." Indeed, it is the test applied by the Missouri Supreme Court. *Cantrell v. City of Caruthersville,* 359 Mo. 282, 221 S.W.2d 471, 474 (1949).

■ Finally, it is argued that requiring disposition in a single case of medical malpractice claims and claims for the non-payment for services should not be permitted on policy grounds. The compulsory counterclaim rule has been in effect in Missouri for many years without causing any injustice and has accomplished its purpose of increasing judicial efficiency and economic benefit to courts and litigants by reducing the time and expense of litigation. We see no reason to make an exception in cases of medical malpractice.

The Preliminary Writ in Prohibition is made absolute.

CRANDALL, P.J., and SATZ, J., concur.